# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN ALLIANCE FOR EQUAL RIGHTS**<br>3571 Far West Blvd #17<br>Austin, TX 78731,<br><div align="right">*Plaintiff*,</div><br>v.<br><br>**HISPANIC SCHOLARSHIP FUND**<br>1015 15th St. NW, Suite 1000<br>Washington, DC 20005,<br><div align="right">*Defendant*.</div> | Case No. 1:25-cv-4207 |

## VERIFIED COMPLAINT

Plaintiff, the American Alliance for Equal Rights, brings this action against the Hispanic Scholarship Fund under 42 U.S.C. §1981. The Alliance seeks declaratory relief, injunctive relief, and nominal damages.

1.     Racial and ethnic discrimination are "invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). The Reconstruction Congress understood this fact when it passed the Civil Rights Act of 1866, which bars discrimination "in the making and enforcement of contracts against whites as well as nonwhites." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 288 (1976); *accord Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 613 (1987). Better known as §1981, this statute guarantees all Americans the "same right" to contract, 42 U.S.C. §1981(a), protecting the "equal

right of all persons" to "make and enforce contracts without respect to" race and ethnicity. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up); *accord Al-Khazraji,* 481 U.S. at 613.

2.  The Hispanic Scholarship Fund is flouting §1981 by inking contracts with some ethnicities but not others. Under its "Hispanic Scholars Program," HSF awards millions in scholarships to thousands of contestants every year. In exchange for a shot at those scholarships, contestants must license away their name, image, and likeness; hand over their personal data; agree to a class-action waiver; and more.

3.  Eligibility for the program depends on ethnicity. To participate, students must "identify as being of Hispanic Heritage." *2025 HSF Scholar Program Application*, HSF (archived Dec. 1, 2025), perma.cc/FQV3-KDFZ. So the program bans non-Hispanic blacks, Asians, Native Americans, and whites.

### Eligibility Requirements

- The HSF Scholar Program is open to students of all races that identify as being of Hispanic Heritage.

- U.S. citizen, permanent legal resident, or DACA

- Minimum of 3.0 GPA on a 4.0 scale (or equivalent) for high school students; minimum of 2.5 GPA on a 4.0 scale (or equivalent) for college and graduate students

- Plan to enroll full-time in an accredited, public or not-for-profit, four-year university, or graduate school, in the US, for the 2025-2026 academic year

- Submit the FAFSA or state-based financial aid forms (if applicable)

4.     That rank discrimination was never lawful, even before *Harvard* held that colleges cannot use race in admissions. But if HSF needed a reminder, *Harvard* reaffirms that eliminating discrimination "means eliminating all of it." 600 U.S. at 206 (emphasis added). Ethnic discrimination is never benign: It always "demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *Id.* at 220 (cleaned up).

5.     That principle is true under the Constitution, true under Title VI, and true under 42 U.S.C. §1981—the federal statute that bars private organizations like HSF from discriminating based on ethnicity when making contracts. Because HSF's program involves contracts and discriminates on its face, it violates §1981.

6.     The American Alliance for Equal Rights has members who are being excluded from the program because of their race. It is entitled to relief.

## PARTIES

7.     Plaintiff, the American Alliance for Equal Rights, is a nationwide membership organization dedicated to ending racial and ethnic classifications across America. This case falls squarely within the Alliance's mission. *E.g.*, *AAER v. Southwest Airlines*, 2024 WL 5012055, at *3 (N.D. Tex. Dec. 6) (Alliance's successful challenge to airline's Hispanics-only grant contest); *AAER v. Fearless Fund*, 103 F.4th 765, 772 (11th Cir. 2024) (Alliance's successful challenge to nonprofit's blacks-only grant contest); *AAER v. Founders First*, 2024 WL 3625684, at *2 (N.D. Tex. July 31) (Alliance's successful challenge to a nonprofit's minorities-only grant contest).

8.     The Alliance was founded in 2021. It was approved by the IRS as a 501(c)(3) tax-exempt organization the same year. The Alliance has more than 300 members, and its membership continues to grow.

9.     The Alliance's standing members are actively involved in the organization and its affairs. Members voluntarily join the Alliance. They pay dues. They receive regular updates. And they offer input on the Alliance's litigation and other activities. The Alliance represents its standing members in good faith.

10.     The Alliance has members who are ready and able to apply for HSF's program but cannot because of their ethnicity. Those members include Students A and B.

11.     The Hispanic Scholarship Fund is "the nation's largest nonprofit organization supporting Hispanic American higher education." *Hispanic Career Pathways Initiative*, HSF (archived Dec. 1, 2025), perma.cc/4YEJ-V6LK. HSF provides "scholarships and support services to as many exceptional Hispanic American students as possible." *Id.* One of those scholarships is the HSF Scholars Program, which offers thousands of applicants millions of dollars in scholarships every year.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "arise[s] under" the Civil Rights Act of 1866, a federal law.

13.     Venue is proper in this district because HSF "reside[s]" in Washington, D.C. *See* 28 U.S.C. §1391(b)(1). A corporation is a resident of the state where it is incorporated, *Hazen v. NRA*, 101 F.2d 432, 437 (D.C. Cir. 1938); *accord Mylan Lab'ys, Inc. v. Akzo, N.V.*, 1990 WL 58466, at *12 n.14 (D.D.C. Mar. 27), and HSF is incorporated in Washington, D.C. According to HSF's most-recent federal tax form, D.C. is HSF's "State of legal domicile," *2024 HSF Form 990* 1, HSF (Aug. 14, 2025), archive.is/pGgFV, meaning HSF is "incorporat[ed]" there, *Instructions for Form 990 Return of Organization Exempt from Income Tax* 10, IRS (Jan. 8, 2025), perma.cc/3E6U-6MVG.

# FACTS

## I.    The Hispanic Scholarship Fund runs the HSF Scholars Program, which is open only to Hispanics.

14.     HSF was founded to provide "scholarships to as many exceptional students" as possible. *About HSF*, HSF (archived Dec. 1, 2025), perma.cc/6PH5-RMX8. Since its founding, HSF has awarded more than $750 million in scholarships to more than 65,000 students. *Empowering Courageous Leaders*, HSF (archived Dec. 1, 2025), perma.cc/F5DL-GXHM.

15.     HSF's flagship program is called the "HSF Scholars Program," which the nonprofit offers once a year. Every year, that program selects 10,000 students from a broad pool of more than 65,000 applicants. *See 2025 HSF Scholar Program Application*. Winners receive a range of prizes, from lucrative scholarships, to exclusive mentorship

opportunities, to private seminars, and more. The scholarship's application "opens January 1st and closes on February 15th" each year. *Help Center – Recommenders* (archived Dec. 1, 2025), perma.cc/Y6NR-6JLU.

16.     Eligibility for the program turns on ethnicity. According to HSF, the program "is open to students of all races that identify as being of Hispanic Heritage." *2025 HSF Scholar Program*. That ethnic bar is a strict "eligibility requiremen[t]." *Id.* (cleaned up). It appears in a list of several other plainly binding requirements—like grade point average, citizenship, and submitting a FAFSA form. *Id.*

17.     HSF repeatedly reiterates its ethnic bar. In an FAQs page on its website, HSF asks: "Do I have to be Hispanic/Latino to apply?" *Help Center – Student Eligibility* (archived Dec. 1, 2025), perma.cc/JXH7-BVUS. Its answer: "The HSF Scholar Program is open to students of all races that identify as being of Hispanic Heritage." *Id.* So "students must be at least one-quarter Hispanic/Latino" "[t]o qualify for the HSF Scholar Program." *Id.*

18.     HSF advertises its ethnic requirement on its own social-media accounts. *E.g.*, *HSF Facebook – Mentions*, Facebook (Feb. 6, 2025), tinyurl.com/2msh7mmt ("Requirements: … must be of Hispanic/Latino heritage.").

19.     HSF's ethnic bar has not been lost on the public. According to Scholarships.com—a leading scholarship clearinghouse—HSF's "eligibility requirements" instruct that applicants "must be of Hispanic heritage." *HSF Scholarship*, Scholarships.com

(last visited Dec. 1, 2025), tinyurl.com/3u5886yr (cleaned up). The University of California Los-Angeles has made the same observation, noting that the HSF Scholars program "require[s]" applicants to "be of Hispanic heritage." *HSF Scholar Program*, UCLA Graduate Education (archived Dec. 1, 2025), perma.cc/K5ZQ-EXF8. And several other organizations agree. *E.g.*, *Hispanic Scholarship Fund Scholarship*, College Data (archived Dec. 1, 2025), perma.cc/R7KW-8EY7 ("Eligibility Requirements … Hispanic."). These third parties, who are trying to direct students to opportunities that are available to them, have no incentive to suggest that something is a requirement when it is not.

## II.    The HSF Scholars Program is a contract.

20.    The HSF Scholars Program is a contract that offers applicants a chance at a lucrative scholarship if they agree to HSF's terms, assent to its privacy policy, draft several essays, and sign a binding pledge.

21.    When applicants first encounter HSF's program webpage, they are told that they must create an HSF account and agree to the nonprofit's "terms of use and privacy policy." *Sign Up*, HSF (archived Dec. 1, 2025), perma.cc/PJ37-FTC6 (cleaned up). To move past the "Sign up" page—and thus complete the first step towards applying for HSF's scholarship—applicants must check a box, stating, "I agree to the Terms of Use and Privacy Policy." *Id.* If an applicant fills in every piece of information on the sign-up page but does not check that box, a prompt will appear, stating, "must

accept Terms of Service." And if applicants ignore that instruction, and refuse to enter those agreements, then they cannot "create [an] account." *Id.* (cleaned up).

22. Both of those agreements are contracts. As HSF's terms of use warn, "this is a contract between you and HSF" that "gives you specific legal rights." *Terms of Use Agreement*, HSF (archived Dec. 1, 2025), perma.cc/XJU7-BXSH (cleaned up). HSF's terms further stress that applicants "may use this Service"—*i.e.*, HSF's application platform—"only if [they] form a binding contract with HSF." *Id.* (cleaned up). So if an applicant "do[es] not agree" to HSF's terms, then they "may not use the Service." *Id.*

23. Applicants who agree to HSF's terms must bargain away important rights. Most notably, applicants must grant HSF a "worldwide license" to use their "name, voice, and/or likeness" whenever they post anything on HSF's application and platform. *Id.* Applicants must also "consent to the collection, use, and disclosure" of their personal data. *Id.* And applicants must agree to a liability waiver, a class-action waiver, a jury-trial waiver, an arbitration agreement, an indemnification agreement, and a choice-of-law clause. *Id.*

24. HSF's privacy policy imposes even more obligations. When applicants assent to that contract, they let HSF "collect" all the "information" they post on HSF's website. *Privacy Policy*, HSF (archived Dec. 1, 2025), perma.cc/M4PX-G6PL. Applicants also let HSF "retain any messages [that they] send through the Service." *Id.* And applicants must also allow HSF to use their personal information for "marketing," "promot[ions]," or "shar[ing]" with "third-party business partners." *Id.*

25.    After applicants have made it through the first step of HSF's application process, they face still more obligations. At the second step, students "must submit" several essays. *Help Center – HSF Scholar Program Selection*, HSF (archived Dec. 1, 2025), perma.cc/K2KK-DDPT. That "essay is one of the most important parts of [the] HSF application." *The Hispanic Scholarship Fund: A Guide to what it is and how to apply*, College Essay Guy (archived Dec. 1, 2025), perma.cc/8BYW-VM7D (cleaned up). It plays a "critical role" in deciding whom among the many applicants wins. *See Ways to Volunteer*, HSF (archived Dec. 1, 2025), perma.cc/ETZ8-MRQX.

26.    Once applicants submit their application, they compete with thousands of other applicants for a shot at HSF's limited pool of prizes. HSF's evaluation process is "rigorous," and "selection is highly competitive." *HSF Scholar Program Selection*. Every year HSF's applications "greatly outnumber the awards [HSF has] available," *id.*, forcing HSF to select winners from "a highly competitive pool of over 69,000 applicants," *HSF Facebook – Mentions*, Facebook (June 13, 2025), tinyurl.com/bdzanp8d.

27.    After jumping through each of those hoops—completing HSF's initial application, agreeing to its terms, assenting to its privacy policy, and completing its essays—a total of 10,000 students are selected as HSF Scholars. That designation imposes even more obligations. After an applicant is dubbed an "HSF Scholar" they must agree to "the HSF Scholar pledge and survey." *HSF Scholar Program Selection*. When students sign that pledge, they must "commi[t]" to "giv[e] back to the Latino community." *Id.*

And they must also promise to fill out and submit several "online Scholar surveys" that help HSF provide "effective scholar services" to future applicants. *Id.*

28.    In exchange for all those obligations, applicants get valuable consideration in return. Most importantly, they get the chance to compete for a spot in the program. HSF scholars are "eligible to receive a scholarship." *2025 HSF Scholar Program Application* (cleaned up). HSF awards "more than $30 million in Scholarships annually." *Id.* And HSF Scholars can receive anywhere "from $500-$5,000." *Id.*

29.    HSF Scholars also gain access to HSF's exclusive job bank. Once they become HSF Scholars, students receive "exclusive access to the HSF Insider," a proprietary platform that "shares invaluable information." *Id.* That platform offers students exclusive "internship and job opportunities with HSF corporate partners," *id.*—a group that includes some of the Nation's largest companies like JP Morgan Chase, Morgan Stanley, and Wells Fargo, *Corporate Partners*, HSF (archived Dec. 1, 2025), perma.cc/V9TB-RD9Z.

30.    HSF Scholars also get access "to HSF's invaluable Scholar Support Services." *2025 HSF Scholar Program Application* (cleaned up). Those services include "career coaching," "mentoring," "leadership development," and "wellness resources." *Help Center – General*; *accord 2025 HSF Scholar Program Application*. HSF Scholars are also eligible to attend exclusive Scholar Conferences, like the nonprofit's "STEM Summit," "Finance Conference," and "the Media, Sports & Entertainment Summit." *2025 HSF Scholar Program Application* (cleaned up). And finally, HSF Scholars are "entitled to list

[themselves] as a recipient" of the HSF scholarship on their resume. *Help Center – General.*

### III.    The scholarship's ethnic bar injures the Alliance's members.

31.    The Alliance has members who are being harmed by HSF's program, including Students A and B. Students A and B are members of the Alliance. They authorized the Alliance to vindicate their rights in this suit because they lack the expertise and resources to bring a lawsuit themselves. And both are ready and able to apply for the program but cannot because of their ethnicity.

32.    **Student A:** Student A is "able" to apply to the HSF Scholars program because he satisfies all the eligibility criteria aside from the demographic one:

    A.    Student A has a 4.0 GPA, which is well above the "3.0 GPA" that HSF requires "for high school students." *2025 HSF Scholar Program Application.*

    B.    Student A plans to enroll full-time in an accredited public or not-for-profit four-year university in the United States during the 2026-2027 academic year. *Id.* Student A recently submitted his college applications, applying to Duke, Georgetown, Vanderbilt, the University of Wisconsin-Madison, and the University of Maryland, among others.

    C.    Because Student A wants to compete for the scholarships—rather than merely the mentorship opportunities, support services, and non-financial prizes—he would submit a FAFSA or state-based financial aid form.

    D.    Student A is a United States Citizen.

33.     Student A cannot apply to the HSF Scholars Program, however, because he is not the right ethnicity. Student A does not "identify as being of Hispanic Heritage." *2025 HSF Scholar Program Application*. He identifies as Asian-American. Student A's parents and grandparents are not from "Argentina, Belize, Bolivia, Brazil, Chile, Colombia, Costa Rica, Cuba, Dominican Republic, Ecuador, Guatemala, Honduras, Mexico, Nicaragua, Panama, Paraguay, Peru, Portugal, El Salvador, Spain, Uruguay, or Venezuela." *Help Center – Student Eligibility*. They are from China.

34.     If a court orders HSF to stop discriminating, Student A would apply when the program's next cycle opens on January 5, 2026. Student A has reviewed the HSF Scholars website and the application page. He has also reviewed the HSF Scholar benefits, the award, and the eligibility requirements. And if a court ordered adequate relief, Student A would complete the application and submit it before the window closes on February 15, 2026. As part of that process, Student A would create an HSF account. But because Student A is not currently eligible for the HSF Scholars program, he has not yet done so.

35.     Because Student A is a high-school senior, this is the first time he can apply to the HSF Scholars Program. If the Court does not order adequate relief this cycle, Student A will remain ready and able to apply for the program in 2027, 2028, and 2029 when he is a rising Sophomore, Junior, and Senior, respectively. During each of those application cycles, Student A will still satisfy the program's non-ethnic eligibility

criteria. And Student A will remain ready to apply to the program, because he will still complete HSF's application if a Court orders HSF to stop discriminating.

36.    Student A sincerely wants to apply to the HSF Scholars program and win the prizes. According to Student A, HSF's scholar-support tools would be helpful to him when he is in college. HSF's career platform would also help Student A find internships. And HSF's program would let Student A compete for $500 to $5,000 in scholarships—an award that could reduce a sizeable amount of Student A's expected student debt.

37.    Student A has recently applied for other scholarships. Student A has applied for scholarships at schools like Vanderbilt. He recently applied to a private scholarship that is funded by Coca-Cola. And he has opted into all of the scholarship opportunities that his college applications have offered.

38.    Student A's background also aligns with HSF's values. Throughout his time in middle and high school, Student A has tried to promote civil rights. And as a racial minority, Student A has worked to oppose discrimination against minority groups, like Asian Americans.

39.    **Student B:** Student B is able to apply to the HSF Scholars program because he satisfies all of its eligibility criteria aside from the demographic one:

A.    Student B has a 3.63 GPA, which places him in the top 25% of his class—and well over the "2.5 GPA" that HSF requires for "college and graduate students." *2025 HSF Scholar Program Application.*

B.      Student B plans to be a full-time law student during the 2026-2027 academic year. *Id.* Student B will complete his third and final year of law school during the 2026-2027 term. Having only recently learned of the HSF program, the current cycle is the last time Student B can apply for the contest.

C.      Because Student B wants to compete for the scholarships, he would submit a FAFSA or state-based financial aid form.

D.      Student B is a United States Citizen.

40.    But Student B cannot apply to the HSF Scholars Program because he is not the right ethnicity. Student B does not "identify as being of Hispanic Heritage." *Id.* He identifies as a non-Hispanic white. Student B's parents do not identify as Hispanic either, because they are from America—not "Argentina, Belize, Bolivia, Brazil, Chile, Colombia, Costa Rica, Cuba, Dominican Republic, Ecuador, Guatemala, Honduras, Mexico, Nicaragua, Panama, Paraguay, Peru, Portugal, El Salvador, Spain, Uruguay, or Venezuela." *Help Center – Student Eligibility.*

41.    Student B is ready to apply to the HSF Scholars program when it opens on January 5. Student B has reviewed the HSF Scholars website and the application page. He has also reviewed the HSF Scholar benefits, the award, and the eligibility requirements. And if a court orders adequate relief, Student B would complete the HSF Scholar application and submit it before the application window closes on February 15, 2026. As part of that process, Student B would create an HSF account. But because

Student B is not currently eligible for the HSF Scholars program, he has not yet done so.

42.    Student B sincerely wants to apply to the HSF Scholars program and win the prizes. According to Student B, HSF's scholar-support tools—like its career services, mentorship, and leadership-development courses—would be helpful for him as a lawyer. HSF's exclusive platform of career opportunities would also be useful for Student B during law school, especially as Student B looks for jobs. And Student B wants to compete for HSF's lucrative scholarships, which could help him pay down his law-school debt.

43.    When Student B applied for law school, he also applied for scholarships. Some of the law schools Student B applied to offered him merit-based scholarships. And the law school Student B ultimately chose to attend offered him a scholarship.

44.    The HSF Scholars program is an especially good fit for Student B. When Student B was in high school, he founded an organization that tried to reform high-stakes standardized testing—a form of instruction that many have argued disadvantages underrepresented communities. After high school, Student B worked at an organization that combats antisemitism, a second organization that protects constitutional rights, and the American Civil Liberties Union. And Student B has long promoted civil rights, working to stamp out racism and bigotry at his local meditation center and theatre.

45.    The Alliance is referring to Students A and B with pseudonyms—and withholding certain identifying details about them and their potential applications—

because the Alliance's members fear that HSF will hold their involvement in this lawsuit against them when selecting scholars. Students A and B also fear reprisal from classmates, professors, future employers, the media, and the public for joining the Alliance.

## CLAIM FOR RELIEF
### Violation of the Civil Rights Act of 1866
### (42 U.S.C. §1981)

46.    The Alliance repeats and realleges each of its prior allegations.

47.    HSF is violating 42 U.S.C. §1981 by intentionally excluding certain applicants from contractual relationships because of their ethnicity.

48.    Section 1981 covers discrimination in contracting by private actors. The statute explicitly covers "nongovernmental discrimination." 42 U.S.C. §1981(c); *accord Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). It "provides a cause of action" to challenge private racial and ethnic discrimination. *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986); *accord Johnson*, 421 U.S. at 459-60. And it covers "private parties" like HSF. *Fearless Fund*, 103 F.4th at 769.

49.    Section 1981 also covers Students A and B because it prohibits discrimination "against, or in favor of, any race" or ethnicity. *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003); *accord Al-Khazraji*, 481 U.S. at 613. Titled "Equal rights under the law," Section 1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 768 (2019), thus protecting "the equal right of all persons … to make and enforce contracts without respect to race" and ethnicity. *Domino's*, 546 U.S. at 474 (cleaned up); *accord Al-Khazraji*, 481 U.S. at 613. Section 1981's

"broad terms" ban discrimination against "any race." *McDonald*, 427 U.S. at 286-96. And that ban covers Asian Americans like Student A and non-Hispanic whites like Student B. *E.g.*, *Al-Khazraji,* 481 U.S. at 613 ("immigrant groups such as the Chinese"); *McDonald*, 427 U.S. at 288 ("whites").

50.     HSF's program is a "contract." 42 U.S.C. §1981(a). Under §1981, a contract is merely "'an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration.'" *Fearless Fund*, 103 F.4th at 775. HSF's program fits that definition: It offers applicants a shot at thousands in scholarships in exchange for their name, image, and likeness; an arbitration agreement; a class-action waiver; an indemnification agreement; and more. *Supra* ¶¶20-30; *Fearless Fund*, 103 F.4th at 775; *accord Founders First*, 2024 WL 3625684, at *3 n.7 (holding that a similar program was a contract because it "offer[ed] contestants a grant in exchange for their time, intellectual property, and a promise to use the funds in a manner acceptable to [Defendants]").

51.     In fact, contests like this one are themselves contracts. *E.g.*, *AAER v. Fearless Fund*, 2023 WL 6295121, at *4 (N.D. Ga. Sept. 27) (agreeing that "courts construe contests as offers for a unilateral contract"). "[N]early all jurisdictions have adopted the rule that contract law governs the sponsor-contestant relationship." *Hampton v. Dillard Dep't Stores*, 247 F.3d 1091, 1104 (10th Cir. 2001) (cleaned up); *see also, e.g.*, *Brooklyn Daily Eagle v. Voorhies*, 181 F. 579, 582-83 (C.C.E.D.N.Y. 1910); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1404-05 (E.D. Cal. 1994) ("answering an essay question" is "a contest"). "[P]erformance by the entrant of the act requested by the sponsor … constitutes an

acceptance of an offer and forms a binding contract." *Hampton*, 247 F.3d at 1104 (cleaned up). So when applicants fill out an application, complete HSF's essays, and agree to HSF's terms, they perform "the act[s]" that HSF "requested," which "constitutes an acceptance" of their "offer." *Id.* That agreement creates a "binding contract." *Id.*; *Personavera, LLC v. Coll. of Healthcare Info. Mgmt. Execs.*, 2021 WL 1313108, at *4 (E.D. Pa. Apr. 8).

52.     HSF's program implicates a right that §1981 protects. "[A] contractual relationship need not already exist" to trigger §1981. *Domino's*, 546 U.S. at 476. Section 1981 "protects the would-be contractor along with those who already have made contracts." *Id.* The law thus provides relief when discrimination "blocks the creation of a contractual relationship." *Id.* So Defendants are liable "under §1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* (quoting *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)).

53.     HSF is intentionally discriminating based on ethnicity. "[P]roof of a facially discriminatory … policy"—or even "a corporate decision maker's express[ed] desire to avoid" contracting with members of a certain ethnicity—is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). Here, there's both. The program "facially discriminat[es]" against anyone who isn't Hispanic. *Id.*; *see supra* ¶¶15-19. And HSF's "corporate decision maker[s]" have expressed a "desire to avoid" contracting with non-Hispanics by broadcasting their anti-Hispanic bar on their Facebook account and their website. *Amini*, 440 F.3d at 359; *see*

*supra* ¶¶15-18. The Alliance, therefore, "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

54.    Because the program violates §1981, it is subject to strict scrutiny. *Gratz*, 539 U.S. at 276 n.23. "[A]ll racial classifications … must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors v. Peña*, 515 U.S. 200, 227 (1995); *see Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (same for §1981). And HSF "bears the burden" of proving that its program satisfies that test. *Fisher v. UT-Austin*, 570 U.S. 297, 310 (2013) (cleaned up). It fails that "daunting" standard. *Harvard*, 600 U.S. at 206-07.

55.    To start, HSF's interests are not compelling. The Supreme Court "ha[s] identified only two compelling interests that permit resort to race-based government action": "One is remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and the other is "avoiding imminent and serious risks to human safety in prisons." *Id.* at 207. Neither exists here. HSF does not even ask applicants if they have suffered prior discrimination. And a generalized interest in diversity is not compelling. *See Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 354 (D.C. Cir. 1998) ("We do not think diversity can be elevated to the 'compelling' level.").

56.    Nor is the program narrowly tailored to achieve any compelling interest. By barring all non-Hispanics from funding, the program imposes an illegal "quota," which is not narrowly tailored to any permissible goal. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989); *accord Hammon v. Barry*, 826 F.2d 73, 79 (D.C. Cir. 1987). The

program also uses ethnicity as a negative for non-Hispanics by treating ethnicity as a positive for Hispanics in a competitive, zero-sum process. *Harvard*, 600 U.S. at 218-19. And HSF never "considered" or reasonably rejected scholarship strategies "other than" the program's scheme of "explicit racial classifications." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 735 (2007). HSF thus cannot show "the most exact connection between justification and classification" that strict scrutiny requires. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986); *Aiken v. City of Memphis*, 37 F.3d 1155, 1164 (6th Cir. 1994).

## PRAYER FOR RELIEF

57.    The Alliance respectfully asks this Court to enter judgment in its favor and against HSF and to provide the following relief:

A.  A declaratory judgment that the HSF Scholars Program violates 42 U.S.C. §1981.

B.  A temporary restraining order and preliminary injunction that bars HSF, pending further order of the Court, from closing the current application window or selecting winners for the program.

C.  A permanent injunction barring HSF from knowing or considering ethnicity in any way in the program—including through criteria that are facially neutral but that can be used as, or are intended to be, proxies for ethnicity.

D.  Nominal damages.

E.  Reasonable costs and expenses of this action, including attorneys' fees and prejudgment interest, under 42 U.S.C. §1988 and any other applicable laws.

F.  All other relief that the Alliance is entitled to.

Dated: December 3, 2025          Respectfully submitted,

_/s/ Cameron T. Norris_
Thomas R. McCarthy
  (D.D.C. No. 489651)
Cameron T. Norris
  (D.D.C. No. VA083)
   _Lead Counsel_
R. Gabriel Anderson
  (TX Bar #24129302)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
gabe@consovoymccarthy.com

*D.D.C. bar application forthcoming

_Attorneys for American Alliance for Equal Rights_

# VERIFICATION

I, Edward Blum, declare as follows:

1.    I am the President of the American Alliance for Equal Rights, the plaintiff here.

2.    I have reviewed this complaint.

3.    For the allegations within my personal knowledge, I believe them all to be true.

4.    For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents and based on the Alliance's conversations with its members, including Student A and Student B.

5.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 3, 2025

_____
Edward Blum
President of American Alliance for
Equal Rights