**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br><br>          Plaintiff,<br><br>v.<br><br>HISPANIC SCHOLARSHIP FUND,<br>100 N. Pacific Coast Hwy, Suite 1900<br>El Segundo, CA 90245<br><br>          Defendant. | Case No.: 1:25-cv-4207-LLA |

## DEFENDANT HISPANIC SCHOLARSHIP FUND'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 5

    I.    The Alliance Is Not Likely To Succeed On The Merits. ....................................... 5

        A.    The Alliance lacks standing. ................................................................. 6

        B.    The Alliance is not likely to demonstrate that a contract exists for purposes of establishing liability under § 1981. ..................................... 10

    II.    The Alliance Has Not Shown A Likelihood Of Irreparable Harm. .................... 15

    III.    The Balance Of Equities Does Not Weigh In The Alliance's Favor And An Injunction Is Not In The Public Interest.......................................................... 16

    IV.    The Court Should Not Enter A TRO Because The Alliance Is Not Asking This Court To Preserve The Status Quo. .......................................................... 18

CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ........................................................................5, 18

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
   103 F.4th 765 (11th Cir. 2024) ........................................................................7, 14

*Am. All. for Equal Rts. v. Founders First Cmty. Dev. Corp.*,
   No. 4:24-cv-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024).........................14

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
   897 F.3d 314 (D.C. Cir. 2018) ..............................................................................4

*Ark. Dairy Coop. Ass'n, v. U.S. Dep't of Agric.*,
   573 F.3d 815 (D.C. Cir. 2009) ..............................................................................5

*Asante v. Azar*,
   436 F. Supp. 3d 215 (D.D.C. 2020) .......................................................................8

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
   885 F. Supp. 2d 156 (D.D.C. 2012) .....................................................................10

*Beacon Assocs., Inc. v. Apprio, Inc.*,
   308 F. Supp. 3d 277 (D.D.C. 2018) .......................................................................4

*Bingler v. Johnson*,
   394 U.S. 741 (1969) ...........................................................................................13

*Butler v. Enter. Integration Corp.*,
   459 F. Supp. 3d 78 (D.D.C. 2020) .......................................................................11

*Carney v. Adams*,
   592 U.S. 53 (2020) .............................................................................6, 7, 8, 9, 10

*CBOCS W., Inc. v. Humphries*,
   553 U.S. 442 (2008) ...........................................................................................14

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) .............................................................................17

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ...............................................................................16

*Clevinger v. Advoc. Holdings, Inc.*,
    134 F.4th 1230 (D.C. Cir. 2025) ........................................................................5, 16

*Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*,
    15 F. Supp. 2d 1 (D.D.C. 1997) ...........................................................................5, 18

*Cross v. U.S. Equal Emp. Opportunity Comm'n*,
    No. 1:25-CV-3702 (TNM), 2025 WL 3280764 (D.D.C. Nov. 25, 2025)................................8

*Davis v. Joseph J. Magnolia, Inc.*,
    640 F. Supp. 2d 38 (D.D.C. 2009) ...............................................................................15

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017) ..............................................................5, 6, 8, 10

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ...............................................................................10

*Hall v. Johnson*,
    599 F. Supp. 2d 1 (D.D.C. 2009) ...............................................................................4, 19

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994).................................................................................14

*Huisha-Huisha v. Mayorkas*,
    27 F.4th 718 (D.C. Cir. 2022) ...............................................................................4, 18

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...............................................................................4, 15

*Mero v. City Segway Tours of Wash. DC, LLC.*,
    826 F. Supp. 2d 100 (D.D.C. 2011) ...........................................................................10

*Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) ...............................................................................15

*Munaf v. Geren*,
    553 U.S. 674 (2008).................................................................................................3

*Mylan Pharms., Inc. v. Sebelius*,
    856 F. Supp. 2d 196 (D.D.C. 2012) ...........................................................................17

*Patterson v. McLean Credit Union*,
    491 U.S. 164 (1989).................................................................................................14

*Sindt v. U.S. Citizenship & Immigr. Servs.*,
    No. CV 22-774 (CKK), 2023 WL 2301978 (D.D.C. Mar. 1, 2023)........................................8

*Singh v. Berger*,
　56 F.4th 88 (D.C. Cir. 2022) .................................................................................18

*Singh v. Carter*,
　185 F. Supp. 3d 11 (D.D.C. 2016) ...........................................................................4

*Spitalnick v. King & Spalding, LLP*,
　No. CV JKB-24-1367, 2025 WL 608013 (D. Md. Feb. 25, 2025) ...........................9

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
　205 F. Supp. 3d 4 (D.D.C. 2016) .................................................................5, 6, 16

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) .....................................................................................................4

*Wis. Gas Co. v. FERC*,
　758 F.2d 669 (D.C. Cir. 1985) ..........................................................................15, 16

*Zoob v. Jordan*,
　841 A.2d 761 (D.C. 2004) .......................................................................................15

**Statutes**

*42 U.S.C. § 1981 ........................................................1, 2, 3, 5, 6, 10, 12, 14, 15

Cal. Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.* ..........................12

**Other Authorities**

*About HSF*, HSF, https://www.hsf.net/about-hsf .....................................................1, 2

17A Am. Jur. 2d Contracts § 1 .................................................................................10

Restatement (Second) of Contracts § 71 cmt. c .......................................................13

Defendant Hispanic Scholarship Fund ("HSF") respectfully submits this Opposition to Plaintiff American Alliance for Equal Rights' (the "Alliance") Time-Sensitive Motion for a Temporary Restraining Order and Preliminary Injunction ("PI Mot."), Dkt. 4. As set forth below in this opposition and the attached declaration, the Alliance is unlikely to succeed on the merits and there is no irreparable injury to warrant such extraordinary relief. Accordingly, the Alliance's Motion should be denied.

## INTRODUCTION

The Alliance seeks the extraordinary remedies of a temporary restraining order and preliminary injunction that would (a) bar HSF from "closing the application window" that has not even been published or opened as of the filing of the Motion, and (b) bar HSF from selecting any Scholars "until this case reaches final judgment," potentially harming thousands of students by hindering their access to scholarship funds and the program's academic and career-related resources. PI Mot. 2, 6. Such relief is wholly unwarranted because the Alliance fails to meet any of the requirements for its requested relief.

*First*, the Alliance is not likely to succeed on the merits because it lacks standing and has failed to allege a contract for § 1981 purposes. *Second*, the Alliance's allegations of harm are highly speculative and unsupported, and as a result the Alliance has not shown irreparable injury. *Third*, the equities and public interest weigh strongly against the Alliance's request. For these reasons, the Alliance's Motion should be denied.

## BACKGROUND

Founded in 1975, HSF is one of the nation's leading nonprofit organizations. *About HSF*, HSF, https://www.hsf.net/about-hsf; Compl. ¶ 11, Dkt. 1. For decades it has supported students and parents, providing them with the knowledge and resources to successfully complete a higher education. *About HSF*, HSF, https://www.hsf.net/about-hsf. It has gifted over $756 million in

scholarships and provides a broad range of programs and support services for students, parents, HSF Scholars, and HSF Alumni. *Id.* As part of its mission to support students and families, HSF runs the Scholar Program. *See* App. 2. Every year, through that program, "HSF selects 10,000 outstanding students as HSF Scholars from a broad and talented pool of applicants," and those selected as Scholars are given access to support programs. *See id.* In the 2025 Scholar Program, "depending on available funds," some of those selected as Scholars were also eligible to receive a scholarship. *Id.* The program does not make any promises to gift funds and does not require applicants to perform any actions in exchange for any funds or access to support programs. *Id.* The 2025 Scholar Program application also provided the 2025 eligibility requirements and that the HSF Scholar Program had been open to students of all races that identify as being of Hispanic Heritage. *Id.*

The Alliance takes issue with this program, calling it "rank discrimination" and alleging that it "discriminates on its face," thus "violat[ing] § 1981," which is the law that "guarantees all Americans the 'same right' to contract." PI Mot. 1 (citation omitted). On December 3, 2025, the Alliance filed a lawsuit against HSF in this Court alleging that HSF "is flouting § 1981" with its Scholar Program and that the Alliance "has members who are being excluded from the program because of their race." Compl. ¶¶ 2, 6; *see also* PI Mot. 2-5, 7-10. It ultimately seeks a (1) declaratory judgment that the Scholar Program violates 42 U.S.C. § 1981, (2) a temporary restraining order and preliminary injunction barring HSF, "pending further order of the Court," from closing the "current application window or selecting winners for the program," (3) a permanent injunction "barring HSF from knowing or considering ethnicity in any way in the program—including through criteria that are facially neutral but that can be used as, or are intended

to be, proxies for ethnicity," (4) nominal damages as well as costs and expenses under 42 U.S.C. § 1988, and (5) "[a]ll other relief that the Alliance is entitled to." Compl. ¶ 57.

In addition to its Complaint, the Alliance filed this PI Motion. The Alliance asks this Court to alter the status quo and "preliminarily enjoin [HSF] from closing the application window or picking winners for its program until further order of this Court," or "[a]t minimum" grant a temporary restraining order doing the same that would last "until this Court resolves the preliminary-injunction motion." PI Mot. 11, 12. The Alliance insists that absent this injunctive relief, "Students A and B will forever lose their opportunity to apply for this round of the program," and they will suffer "hurt, stigma, and exclusion," that "cannot be reliably rectified by damages." *Id.* at 10.

HSF has filed a motion to dismiss, which establishes that the Alliance's claim fails for at least two independent reasons: (1) this Court lacks subject matter jurisdiction because the Alliance has no Article III standing, as *inter alia* there is no injury-in-fact, and (2) the Alliance's § 1981 claim fails to state a claim upon which relief can be granted because the Alliance has not and cannot sufficiently allege that the HSF Scholar Program is a contract.[1] If the Court grants HSF's Motion to Dismiss, it need not consider the Alliance's PI Motion. Nonetheless, HSF now files this opposition to the Alliance's request for preliminary relief because the Alliance cannot meet the requirements for the extraordinary relief it seeks.

## LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d ed. 1995)). "[I]t is never awarded as of right." *Id.* at 690. A court "may only"

---

[1] HSF fully incorporates the arguments made in its Motion to Dismiss as bases for denying the Alliance's PI Motion.

grant this "extraordinary remedy … upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "Issuing a preliminary injunction based only on a possibility of irreparable harm," for example, "is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy." *Id.* "The moving party must make a 'clear showing that four factors[, the *Winter* factors], taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest.'" *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)); *see Winter*, 555 U.S. at 22; *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions.").

As to a request for mandatory injunctive relief, i.e., relief that "would alter, rather than preserve, the status quo by commanding some positive act," its burden is higher. *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014)). To obtain such relief, a plaintiff must "meet a higher standard than in the ordinary case by showing clearly that [it] is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Id.* (quoting *Electr. Privacy Info. Ctr.*, 15 F. Supp. 3d at 39). "[T]he status quo, [is] defined as 'the last uncontested status which *preceded* the pending controversy.'" *Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 291 (D.D.C. 2018) (emphasis added) (quoting *Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) ("'The status quo is the last *uncontested* status which preceded the

pending controversy.' The traditional goal of a preliminary injunction is to preserve *that* status quo." (quoting *Dist. 50, United Mine Workers*, 412 F.2d at 168)). However, in asking to alter the status quo, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (citation omitted). As a rule, "when a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id.* (citation omitted).

## ARGUMENT

### I.    The Alliance Is Not Likely To Succeed On The Merits.

Of the *Winter* factors, "the first and most important factor [is] whether petitioners have established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Courts in the D.C. Circuit will "decline[] to 'proceed to review the other three preliminary injunction factors' when the movant has 'shown no likelihood of success on the merits.'" *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1236 n.3 (D.C. Cir. 2025) (quoting *Ark. Dairy Coop. Ass'n, v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009)). "[A] failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing *Ark. Dairy Coop. Ass'n*, 573 F.3d at 832).

Because "[a] plaintiff unlikely to have standing is *ipso facto* unlikely to succeed; and when the plaintiff is unlikely to succeed, there is no need to consider the remaining factors," the analysis may begin and end with the Alliance's lack of Article III standing. *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 n.2 (D.C. Cir. 2017) (cleaned up). The Alliance's § 1981 claim is also unlikely to succeed for an independently

sufficient reason: there is no contract for the Scholar Program and thus § 1981 does not apply. *See* HSF's Mem. Supp. Mot. Dismiss 18-24 (filed Dec. 24, 2025) ("Mot. Dismiss"). This Court should deny the requested injunctive relief on these grounds alone. *See Standing Rock Sioux Tribe*, 205 F. Supp. 3d at 26.

### A. The Alliance lacks standing.

To obtain a preliminary injunction, a plaintiff is required to "'show a "substantial likelihood" of standing' 'under the heightened standard for evaluating a motion for summary judgment.'" *Elec. Priv. Info. Ctr.*, 878 F.3d at 377 (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912-13 (D.C. Cir. 2015)). A "plaintiff cannot 'rest on ... mere allegations, but must set forth by affidavit or other evidence specific facts' that, if 'taken to be true,' demonstrate a substantial likelihood of standing." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"The plaintiff bears the burden of establishing all three elements of standing," *id.* (quoting *Lujan*, 504 U.S. at 561), that "(1) it has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision,' i.e., a decision granting the plaintiff the relief it seeks." *Id.* (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)). As explained in HSF's Motion to Dismiss, *see* Mot. Dismiss 13-18, where, as here, a plaintiff seeks to challenge an allegedly discriminatory selection process, they must have either applied or been "able and ready" to apply when the complaint was filed to have Article III standing. *See Carney v. Adams*, 592 U.S. 53, 60 (2020) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)). A plaintiff who files suit before being rejected from an application pool for a purportedly unlawful reason, or as here, can even apply to become part of the pool at all, must "sufficiently differentiate[] himself from a general population of individuals affected in the abstract by the legal provision he attacks." *See id.* at 63-64. Where a

would-be applicant merely claims he "would apply," but that statement "of general intent" lacks "supporting evidence," such as when it is made, e.g., "without any actual past injury, without reference to an anticipated timeframe, without prior … applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence," he has failed to sufficiently differentiate himself and to establish Article III standing. *Id.*

For starters, the Alliance's suit and its PI Motion are premature. As of the filing of the Complaint and the PI Motion, and even this response, it is not possible for *any* student, members of the Alliance or otherwise, to have suffered a concrete, immediate injury as a result of an application that is not yet open, i.e., there is no possible discrimination in the application process when the application process has yet to commence.[2] The Alliance relies *solely* on the application and eligibility requirements for the *2025* Scholar Program and assumes—without foundation or evidentiary support—that the same requirements and the same timeline will be in place this *upcoming* year. But the instant motion seeks to prevent future, not past alleged harm. PI Mot. 10 (alleging harm that purportedly must be prevented as Students A and B "los[ing] their opportunity to apply for this round of the program"). None of the links to HSF's website that are incorporated into the Complaint, nor any documents attached to the Alliance's PI Motion, establish either the timeline for the 2026 Scholar Program application, nor state what the eligibility requirements for this upcoming year will be, beyond mere unsupported conjecture from the Alliance's own declarants. *See* Compl. ¶¶ 3, 11, 14, 15, 17, 21, 22, 24, 25, 29; Mot. Dismiss 9-12 (noting same).

---

[2] For this reason, the Alliance's repeated invocation of *Fearless Fund* is particularly inapt as support. PI Mot. 6-8, 10-11. As the Eleventh Circuit observed, "[t]he Alliance sued Fearless the day *after* applications opened for the [relevant] period." *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 770 (11th Cir. 2024) (emphasis added). Thus, none of the issues here as to the lack of availability of the criterion for evaluation were at issue there as they are here.

Even worse, because the Alliance's suit was prematurely filed, the Court has no eligibility criteria for 2026 to evaluate as of the filing of this response. *Asante v. Azar*, 436 F. Supp. 3d 215, 224 (D.D.C. 2020) (observing "constitutional requirement" that an injury in fact "be certainly impending" for a plaintiff to have standing and for its claim to be ripe (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996))); *Sindt v. U.S. Citizenship & Immigr. Servs.*, No. CV 22-774 (CKK), 2023 WL 2301978, at *3 (D.D.C. Mar. 1, 2023) (requiring that "[w]hen Plaintiff filed this suit … his claim of injury … needed to have been actual and imminent, not conjectural or speculative" for it to be ripe). Put differently, the Alliance alleges that "[e]ligibility for the program turns on ethnicity," PI Mot. 2, but without providing evidence as to the criteria for the *2026* Scholar Program, the Alliance has simply failed to establish that its members will encounter such a requirement. This was a wholly avoidable error brought on by the Alliance's decision to file suit before the 2026 application is available. Ultimately, it is the Alliance's burden to bring forward evidence establishing that it has a substantial likelihood of standing at the time the complaint is filed. *Cross v. U.S. Equal Emp. Opportunity Comm'n*, No. 1:25-CV-3702 (TNM), 2025 WL 3280764, at *4 (D.D.C. Nov. 25, 2025) ("At the preliminary injunction stage … a plaintiff must make a 'clear showing' that he is 'likely' to establish standing" (quoting *Winter*, 555 U.S. at 22)). It has failed to do so. *Elec. Priv. Info. Ctr.*, 878 F.3d at 377.

Separate and apart from the standing issues that arise from the Alliance's untimely suit, the Alliance also lacks standing, based on its representational standing theory, because Students A and B are not "able and ready" to apply. The Students' bare claims that they each "would apply" are unsupported by sufficient evidence that would suggest anything other than "an abstract, generalized grievance." *Carney*, 592 U.S. at 63. These bare claims show no "actual desire to [be selected]," as at least partially evidenced by a "failure to apply previously when he was eligible"

and failure to "sufficiently differentiate[] himself from a general population of individuals affected in the abstract by the [alleged legal wrong] he attacks." *Id.* at 63-64; *see* Mot. Dismiss 13-18.

The Alliance relies heavily on the same bare "I would apply ... " language that was insufficient in *Carney*, 592 U.S. at 63; *see* Compl. ¶¶ 34, 41. It suffers the same failing as the plaintiff in *Carney*, by backing up these "few words of general intent" with insufficient "supporting evidence," and in so doing fails to establish that they have anything "more than an abstract generalized grievance." *Carney*, 592 U.S. at 63-65. For example, the Alliance brings forward no allegations of "any actual past injury." *Id.* at 63; *supra*, at 7 (no past injury alleged). Nor does it show that the Students have taken "concrete steps to prepare or submit" an application. *Spitalnick v. King & Spalding, LLP*, No. CV JKB-24-1367, 2025 WL 608013, at *5 (D. Md. Feb. 25, 2025), *reconsideration denied*, No. CV JKB-24-1367, 2025 WL 1474835 (D. Md. May 22, 2025). Notably, Student B is a second-year law student, *see* Compl. ¶ 39A-B, and has thus been presumptively eligible to apply for the HSF Scholar Program for *years* but he has never once applied, *see id.* ¶¶ 40-44 (no reference to previous applications to the HSF Scholar Program). The students assume, without basis, that they "satisfy all the eligibility aside from the ethnic one," PI Mot. 5, and claim they have "reviewed … the eligibility requirements," *id.* at 6. But as noted above, *supra*, at 7-8, there were no 2026 criteria available when the motion for preliminary relief was filed, Vargas Decl. ¶ 8, so they have not reviewed the requirements that would apply *to them* nor can they claim that they satisfy them. Indeed, neither Student A nor B has apparently even *accessed* the HSF portal where many resources available to all portal users currently exist, and where they say that they expect the 2026 application, and presumably those criteria, will be posted. *See* PI Mot. 6 (admitting they have not created an HSF account (citing App. 93 ¶ 9; App. 88 ¶ 9; App. 79 ¶ 14)); *see also* Compl. ¶¶ 15, 34, 41. They say they "would" apply during the 2026 application

window, *see* App. 88 ¶ 9; App. 93 ¶ 9, but they do not claim to have even completed a FAFSA form, the submission of which they assume will be a requirement for the 2026 application cycle because it was a requirement for the 2025 application, *see* Compl. ¶¶ 16, 32, 39. Ultimately, it is *plaintiff's* burden to show a "substantial likelihood of standing." *Food & Water Watch*, 808 F.3d at 913. But Students A and B have failed to do anything to "differentiate[ themselves] from a general population of individuals affected in the abstract by the [program] [they] attack[ ]," namely the millions of high school seniors, college students, and graduate students in America, *see Carney*, 592 U.S. at 64, thus they have not established that they are "able and ready," *id.* at 62-65. Nor, in turn, has the Alliance shown a substantial likelihood of standing, and it is as a consequence not entitled to a preliminary injunction. *Food & Water Watch*, 808 F.3d at 913.

Moreover, all agree that as of the time relief was requested, Students A and B were *unable* to apply for the same reason as all would-be applicants were unable: as of December 3, 2025, the application for the 2026 Scholar Program was not open. Vargas Decl. ¶ 8. In sum, as the Alliance has failed to bear its burden to set forth specific facts that demonstrate a substantial likelihood of standing, its motion for preliminary injunction must be denied. *See Elec. Priv. Info. Ctr.*, 878 F.3d at 377.

**B.    The Alliance is not likely to demonstrate that a contract exists for purposes of establishing liability under § 1981.**

A contract is "an agreement to do, or refrain from doing, a particular thing, upon a sufficient consideration." 17A Am. Jur. 2d Contracts § 1; *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 885 F. Supp. 2d 156, 181-82 (D.D.C. 2012) (observing that parties to a contract must have "'a mutual intent to contract including offer, acceptance, and consideration'" (citation modified)); *Mero v. City Segway Tours of Wash. DC, LLC.*, 826 F. Supp. 2d 100, 105 (D.D.C. 2011) ("[A] contract must 'be sufficiently definite as to its material terms,' (which include, for example, subject

matter, price, payment terms, quantity, quality, and duration)." (citation omitted)). The terms of a contract are defined by the parties and must be enforced by the courts. *Cf. Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 92 (D.D.C. 2020).

Contrary to the Alliance's misrepresentation, HSF's Terms of Use and Privacy Policy are not contracts for access to the benefits of the Scholar Program or guaranteed scholarship funds. To the extent they are contracts, they are contracts to use HSF's website, HSF.net.[3] The Terms of Use begins by providing that "[t]his page explains the terms by which you may use our online and/or mobile services, web site, and software provided on, or in connection with, the service (collectively the "Service")." App. 18. As explained in more detail in HSF's Motion to Dismiss, the Terms of Use simply provides terms concerning access to HSF's website by "all visitors, users, and others who access the Service." *Id.* It does not concern any scholarship or program. In fact, it explicitly states that "[b]y accessing or using the Service, you signify that you have read, understood, and agree to be bound by this Terms of Use Agreement … and to the collection and use of your information, as set forth in the HSF Privacy Policy, whether or not you are a registered user of our Service." *Id.* In exchange for agreeing to the Terms of Use and Privacy Policy, users are "granted a non-exclusive, limited, non-transferable, freely revocable license to use the Service for [their] personal, noncommercial use only and as permitted by the features of the Service." App. 19.

Indeed, the Terms of Use makes only a single reference to the scholarship at all. In a section titled "User Content," the Terms of Use provides that:

> The User Content you create remains yours; however, by providing or sharing User
> Content through the Service, you agree to allow others to view, edit, and/or share

---

[3] HSF's Terms of Use and Privacy Policy are wholly ethnicity neutral. *See* Ex. 6 to PI Mot., at App. 17-36 (Terms of Use); Ex. 7 to PI Mot., at App. 37-49 (Privacy Policy). As is creating an HSF account. *See* Ex. 5 to PI Mot., at App 12-16 (screenshots of "Sign Up" screens showing that account creation does not ask any questions about ethnicity—the only background related question it asks is "Role"—e.g., "Student" (App. 15)).

> your User Content in accordance with your settings and this Agreement. For example, by submitting a scholarship application through the Service, you agree to allow donors to view certain information provided by you and to allow readers of scholarship essays to read and review your essays.

App. 21-22. This singular statement in the Terms of Use, which does no more than authorize third parties to review user content, does not create a contract for the Scholar Program.

For its part, the Privacy Policy likewise is not a contract for the Scholar Program either. Indeed, privacy policies are found on nearly every website and are legally *required* for most websites that collect users' data. *See* Cal. Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*. Thus, the "privacy policy explains how [HSF] collect[s], use[s], disclose[s], and protect[s] information that [it] collect[s] through the process of providing [its] Service, and your choices about the collection and use of your information." App. 38. The Service that the Privacy Policy contemplates providing is the same Service referenced in the Terms of Use, i.e., the HSF.net website and portal. *Id.* ("Capitalized terms that are not defined in this Privacy Policy have the meaning given to them in our Terms of Use."). Accordingly, those agreements are intended to be read together granting certain rights to HSF in exchange for the user's license to use HSF.net. *See* App. 19 (Terms of Use providing license). The Alliance conclusively alleges that the "contract" for § 1981 purposes is HSF's "Terms of Use and Privacy Policy" for HSF.net, HSF's web portal. PI Mot. 2-3. But that alleged contractual relationship by its own clear terms is separate and distinct from the benefits of the Scholar Program, including the scholarship awarded to HSF Scholars. The Court could stop there. The contract that the Alliance relies on—the Terms of Use and Privacy Policy—cannot create § 1981 liability for the Scholar Program. And without a contract, the Alliance cannot succeed on the merits of its claim.

Further, there is nothing to suggest that the HSF Scholar Program itself is a contract. Rather, the HSF Scholar Program is a gift and thus not subject to § 1981. "[T]he ordinary

understanding of 'scholarships' and 'fellowships' [is] as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients." *Bingler v. Johnson*, 394 U.S. 741, 751 (1969). Indeed, as illustrated in the Restatement (Second) of Contracts, when one person promises another money to go to college, but it is clear that the funder is providing a gift rather than paying a salary for the college attendance, the money is a mere gratuity. *See* Restatement (Second) of Contracts § 71 cmt. c (citing § 24 ill. 2). Here, as explained in more detail in the Motion to Dismiss, Mot. Dismiss 24-31, the HSF Scholar Program is the quintessential "disinterested, 'no-strings' educational grant[], with no requirement of any substantial *quid pro quo* from the recipients" aimed at helping students of Hispanic Heritage complete a higher education. *Bingler*, 394 U.S. at 751.

The Alliance fails to allege any material terms imposing any kind of promise or performance by HSF Scholars. Instead, the Alliance alleges simple eligibility requirements to apply for the scholarship, including, based on the 2025 criteria, "be[] of Hispanic Heritage," be a "U.S. citizen, permanent legal resident, or DACA," have a minimum 3.0 GPA, "[p]lan to enroll full-time in an accredited … school," and "[s]ubmit FAFSA or state-based financial aid forms," if applicable. App. 2; PI Mot. 2. Moreover, HSF provides Scholars with "invaluable Scholar Support Services and [the opportunity to] be eligible to receive a scholarship, *depending on available funds*." App. 2 (emphasis added). There is no promise to provide funds, even to HSF Scholars; they are only gifted if *available*. Therefore, providing the gift is optional for HSF—that is not a contract.

The Alliance tries to characterize the Program as a "contest." PI Mot. 8-9. But the Alliance does not even purport to allege a contract for the Scholar Program itself. *See generally id.* at 1-10 (failing to allege a direct contract for the Scholar Program). And the cases the Alliance relies on

are inapposite. Those cases either explicitly stated that the at-issue program was a contract, the fact that the program was a contest was undisputed, or the program bears no resemblance to the one in this case. *See id.* at 7-9 (citing *Fearless Fund Mgmt.*, 103 F.4th at 775 (Section 1981 lawsuit where original contest rules explicitly stated that they constituted "A CONTRACT"); *Am. All. for Equal Rts. v. Founders First Cmty. Dev. Corp.*, No. 4:24-cv-00327, 2024 WL 3625684, at *3 (N.D. Tex. July 31, 2024) (Section 1981 lawsuit in which it was "not disputed" that the grants subject to the dispute constituted a contract); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1395 (E.D. Cal. 1994) (concerning sweepstakes)[4]; *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 177-78 (1989) (Section 1981 lawsuit concerning a direct employment contract between plaintiff employee and defendant employer); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445-46 (2008) (similar). Importantly, the Alliance does not identify a single case in which an educational scholarship from a charitable organization has been deemed a contract. This Court should not be the first.

In a desperate attempt, the Alliance also argues, without citing any case law and again relying on prior years of the Program, that HSF requires successful applicants to agree to the HSF Scholar pledge and survey, which it says makes the program a contract. PI Mot. 4. But by the Alliance's own description, *id.*, the pledge is no more a contract than the Boy Scout or Girl Scout pledge. *See* Scouting America, *What are the Scout Oath and Scout Law?*, https://www.scouting.org/about/faq/question10/ (last visited Dec. 21, 2025) (noting that Scouting America's pledge asks Scouts to (1) "[t]ell the truth and keep promises"; (2) "[v]olunteer to help others without expecting a reward"; (3) be "polite," "helpful," "courteous," "kind," and "brave"; (4) "[f]ollow the rules of your family, school, and pack" and obey your community and country's

---

[4] Contrary to the Alliance's misleading characterization, *Haskell* does not hold that "answering an essay question" alone is "a contest." *See* PI Mot. 9.

laws; and (5) "[w]ork to pay your own way"); *see* PI Mot. 4 (the pledge asks Scholars to "'commi[t]' to 'giv[ing] back to the Latino community'"). Those pledges are not the type of consideration required to form a contract. *See Zoob v. Jordan*, 841 A.2d 761, 765 (D.C. 2004) ("[A] mere promise to make a gift is unenforceable."); *Davis v. Joseph J. Magnolia, Inc.*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009) ("[A] promise is illusory when performance of that promise is optional."). This argument is too attenuated to warrant any consideration.

Overall, because the only contracts that the Alliance alleges are the Terms of Use and Privacy Policy, which are not contracts for the Scholar Program, the Alliance's § 1981 claim will likely fail. Accordingly, this Court should deny the Alliance's request for extraordinary relief.

## II.    The Alliance Has Not Shown A Likelihood Of Irreparable Harm.

The Alliance has wholly failed to meet the "high standard for irreparable injury" which it must do for preliminary injunctive relief to be granted. *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). To meet this high bar, it is not enough for a plaintiff to claim that an injury is likely to occur, it must substantiate its assertion. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur." *Id.* Moreover, this support must show that irreparable injury is "likely" to occur, not merely possible. *See id.* Plaintiff must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future. *See id.* Moreover, the injury must be "certain and great," "actual and not theoretical," and "beyond remediation." *Newby*, 838 F.3d at 8 (quoting *Chaplaincy*, 454 F.3d at 297). Furthermore, Plaintiff must show that the alleged harm will directly result from the action which it seeks to enjoin. *See Wis. Gas Co.*, 758 F.2d at 674. "[A] 'movant's failure to show any irreparable harm is ... grounds for refusing to issue a preliminary injunction, even if the other

three factors ... merit such relief.'" *Clevinger*, 134 F.4th at 1236 (quoting *Chaplaincy*, 454 F.3d at 297).

Here, the Alliance entirely fails to substantiate its assertion that any injury is likely to occur. To the extent financial injuries are alleged, e.g., that a member might not receive scholarship funds, such claims are flatly insufficient to support a claim of irreparable harm. *Clevinger*, 134 F.4th at 1234 ("[F]inancial injuries are rarely irreparable because they are presumptively remediable through monetary damages." (quoting *Wis. Gas Co.*, 758 F.2d at 674)). While its claims as to non-financial injuries suffer from many defects, the Alliance's failure to do more than make bare allegations that it "and its members will suffer irreparable harms in the form of racial discrimination and the lost opportunity to compete," PI Mot. 10, are fatal to its claims of irreparable harm. The Alliance has no proof that the harm has occurred in the past and is likely to occur again, instead, its claims are speculative. *See Wis. Gas Co.*, 758 F.2d at 674. The Alliance also fails to come forward with "proof indicating that the harm is *certain* to occur in the *near* future." *Id.* (emphasis added). Lacking proof as to what the 2026 application dates or application criteria are, it can prove neither certainty of harm nor that any harm will occur in the near future, as is its burden.

## III.    The Balance Of Equities Does Not Weigh In The Alliance's Favor And An Injunction Is Not In The Public Interest.

Because the Alliance has failed to demonstrate that it is likely to succeed on the merits, and additionally has failed to show irreparable harm, the Court need not consider the final two *Winter* factors to deny the requested preliminary relief. *See Standing Rock Sioux Tribe*, 205 F. Supp. 3d at 26 ("[T]he Court may deny a motion for preliminary injunction, without further inquiry, upon finding that a plaintiff is unable to show *either* irreparable injury or a likelihood of success on the merits."); *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). In

any event, the balance of equities and the public interest both weigh against granting the Alliance's requested injunction. The Alliance brushes aside the magnitude of the burden its request would place on HSF's ability to keep its program running, *see* PI Mot. 11, and concludes that "no one has a valid interest" in receiving the benefits provided by the Scholar Program because HSF is particularly focused on supporting students of Hispanic heritage, *see id.*—an absurd claim considering the Alliance spends the bulk of its Motion arguing that its members are desperate to participate. The Alliance is asking this Court to halt the Scholar Program selection process for 70,000 applicants, and approximately 10,000 would-be HSF Scholars. *See* PI Mot. 2; App. 2. Beyond the administrative burden on HSF to keep the application window open until this case is finally resolved, granting the requested relief will halt the receipt of much-needed scholarship funds for thousands of would-be HSF Scholars who would otherwise use that money to pay for school. Furthermore, at least Student A is in his first year of eligibility for the Scholar Program and will have the opportunity to apply in the future. App. 93 ¶ 10.  Meanwhile, although the Alliance asserts that 2026 will be the last time Student B will be eligible to apply for the Scholar Program, PI Mot. 10, Student B may have future opportunities to apply for the Scholar Program if he pursues further higher education, *see* App. 2. Given the reliance interest of thousands of students on the receipt of scholarship funds from HSF and the likely future opportunities for Students A and B to apply, the balance of equities weighs heavily in favor denying the requested emergency relief. *Mylan Pharms., Inc. v. Sebelius*, 856 F. Supp. 2d 196, 217 (D.D.C. 2012) ("In considering whether the balance of equities favors granting a preliminary injunction, courts consider whether an injunction would 'substantially injure other interested parties.'" (quoting *Chaplaincy*, 454 F.3d at 297)); *Chaplaincy*, 454 F.3d at 304 ("[D]emands for preliminary relief that inflict untoward detriment on persons not party to the case"  will "defeat[] a request for a preliminary injunction").

**IV.   The Court Should Not Enter A TRO Because The Alliance Is Not Asking This Court To Preserve The Status Quo.**

The Alliance frames its alternative request for a TRO as "preserv[ing] the status quo," PI Mot. 11, but in fact it is seeking to alter the status quo, subjecting the Alliance's request for relief to a higher standard. The Alliance asks the Court to "prevent[] the Fund from closing the application window or picking winners." PI Mot. at 11-12. That is not maintaining the status quo. *See, e.g.*, *Huisha-Huisha*, 27 F.4th at 733 ("'The status quo is the last *uncontested* status which preceded the pending controversy.'" (quoting *Dist. 50, United Mine Workers*, 412 F.2d at 168)). The Alliance asks for a significant disruption to the year-long process of selection and documentation involved in administering the HSF Scholar Program and selecting the year's 10,000 HSF Scholars. *See* App. 2 (outlining timing, sequencing, and multiple steps involved in administering 2025 HSF Scholar Program); *Aamer*, 742 F.3d at 1043-44 (preserving status quo by denying plaintiffs' request that government be prevented from deploying the protocol it usually did in the circumstance at issue—there, a force-feeding protocol). "[C]ourts are institutionally wary of granting relief that disrupts, rather than preserves, the status quo." *See Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022); *Aamer*, 742 F.3d at 1043 ("The primary 'purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition—to preserve the status quo.'" (quoting *Doeskin Prods., Inc. v. United Paper Co.*, 195 F.2d 356, 358 (7th Cir. 1952)). As a rule, "[w]hen a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law *clearly favor* the moving party.'" *Columbia Hosp. for Women Found.*, 15 F. Supp. 2d at 4 (citation omitted).

In asking to alter the status quo, the Alliance "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Id.* (citation omitted). The Alliance has not

even attempted to show extreme or very serious damage, thus it fails to meet this higher standard. In fact, it has not even shown irreparable harm. *See supra*, at 15-16. Further, as noted above, the facts and law here do not support the Alliance, as it lacks standing and is unlikely to succeed on the merits. *See supra*, at 5-15. Accordingly, even if the Alliance were not required to meet this higher standard, the Court should deny the request for a TRO for the same reason it should deny the request for a preliminary injunction. *See Hall*, 599 F. Supp. 2d at 3 n.2 (same standard).

## CONCLUSION

For the foregoing reasons, the Alliance's motion for emergency relief should be denied.

Respectfully submitted,

*/s/ Edward H. Williams II*
Edward H. Williams II (D.C. Bar No. 1046312)
**ORRICK, HERRINGTON &**
  **SUTCLIFFE LLP**
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Ave, NW
Washington, DC  20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
edward.williams@orrick.com

Jill L. Rosenberg (*pro hac vice*)
**ORRICK, HERRINGTON &**
  **SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019
(212) 506-5000
jrosenberg@orrick.com

ReNika Moore*
Sarah Hinger*
Alexis Alvarez*
**AMERICAN CIVIL LIBERTIES UNION**
 **FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(917) 565-6837
rmoore@aclu.org

*pro hac vice forthcoming*

*Counsel for Hispanic Scholarship Fund*

December 24, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 24, 2025, a copy of the foregoing OPPOSITION TO TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION was served on all parties of record.

*/s/* Edward H. Williams II
Edward H. Williams II (D.C. Bar No. 1046312)