# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| American Alliance for Equal Rights, | **Case No. 1:25-cv-04207-LLA** |
| Plaintiff, | |
| v. | |
| Hispanic Scholarship Fund, | |
| Defendant. | |

**BRIEF OF COUNCIL ON FOUNDATIONS AND INDEPENDENT SECTOR AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT HISPANIC SCHOLARSHIP FUND**

STEPHANIE SCHUSTER (DC BAR NO. 1011924)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
T. 202.373.6595

EMILY CUNEO DESMEDT (*PRO HAC VICE FORTHCOMING*)
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
T.  609.919.6673

*Counsel for Amici Curiae*
*Council on Foundations and Independent Sector*

## **TABLE OF CONTENTS**

**Page**

INTEREST OF AMICI CURIAE ...........................................................................1

SUMMARY OF ARGUMENT .............................................................................3

ARGUMENT .........................................................................................................4

      1.     501(c)(3) Organizations Operate Exclusively for
              Charitable Purposes that Benefit the Public Welfare. ...............4

      2.     HSF's Scholarships Are Charitable Gifts from a
              Charitable 501(c)(3) Organization, Not Contracts. ...................6

      3.     The Alliance's Claims Threaten a Long-Recognized
              Freedom to Give That is Critical to Public Welfare. .................9

CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

CASES

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  430 F. Supp. 2d 222 (S.D.N.Y. 2006), *aff'd*, 651 F.3d 218 (2d Cir. 2011)..............9

*Better Bus. Bureau v. United States*,
  326 U.S. 279 (1945)...................................................................................6

*Bingler v. Johnson*,
  394 U.S. 741 (1969)...................................................................................8

*Domino's Pizza, Inc. v. McDonald*,
  546 U.S. 470 (2006)...................................................................................7

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
  940 A.2d 996 (D.C. 2008) .........................................................................7

*Family Tr. of Mass., Inc. v. Unites States*,
  722 F.3d 355 (D.C. Cir. 2013)................................................................5, 6

*Hernandez v. Comm'r of Internal Revenue*,
  490 U.S. 680 (1989)...................................................................................7

*Muckle v. UNCF*,
  930 F. Supp. 2d 1355 (N.D. Ga. 2012)......................................................7

*Riley v. Nat'l Fed'n of the Blind, Inc.*,
  487 U.S. 781 (1988)...................................................................................9

*Russell v. District of Columbia*,
  747 F. Supp. 72 (D.D.C. 1990), *aff'd*, 984 F.2d 1255 (D.C. Cir. 1993) ..............6

*Spirit Lake Tribe ex rel. Comm. of Understanding & Respect v. Nat'l Collegiate Athletic Ass'n*,
  715 F.3d 1089 (8th Cir. 2013) ...................................................................8

*United States v. Am. Bar Endowment*,
  477 U.S. 105 (1986)...................................................................................8

**Page(s)**

**STATUTES**

26 U.S.C. § 170(a) ...........................................................................................4, 7

26 U.S.C. § 501(c)(3) .........................................................................................3, 5

42 U.S.C. § 1981 ..................................................................................................6

**RULES & REGULATIONS**

26 C.F.R. § 1.501(c)(3)-1(d)(2) ...........................................................................5

26 C.F.R. § 1.501(c)(3)-1(c)(1) ...........................................................................5

**OTHER AUTHORITIES**

*Member Directory*, Council on Foundations, https://cof.org/member-directory/non-members (last visited Jan. 28, 2026) ...........................................................2

*Membership List*, Independent Sector (Dec. 2023), https://independentsector.org/wp-content/uploads/2023/10/Membership-List-1223.pdf (last visited Jan. 28, 2026) .................................................................2

## INTEREST OF *AMICI CURIAE*

*Amici curiae* Council on Foundations and Independent Sector are two of the largest membership organizations representing the interests of philanthropic organizations in the United States.

**The Council on Foundations** ("Council") is a national membership organization, recognized by the IRS as exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). The Council represents a broad community of foundations, corporations, and other philanthropic entities. Its network includes more than 1,000 organizations from all fifty states, spanning diverse missions and perspectives.

**Independent Sector** is a national membership organization representing an equally diverse community of changemakers, nonprofits, foundations, and corporations working to strengthen civil society. Independent Sector's community consists of hundreds of nonprofits, foundations, and private sector partners.

*Amici*'s members include community foundations, private foundations and nonprofit organizations, religious nonprofits, independent and family foundations, public charities, and corporate grantmakers, each with their own missions to advance the public good. Examples of the missions of the Council's members include "identifying, illuminating, and addressing barriers to health;" "reducing poverty and injustice, strengthening democratic values, promoting international cooperation, and

1

advancing human achievement;" "creating a world where every person has the opportunity to live a healthy, productive life," and "helping children in need and guiding them to Christianity."[1]  Examples of the missions of Independent Sector's members include advancing the arts in the United States; "support[ing] the safety, health, and spiritual strength of American Indian and Alaska Native children;" "improving public policy, informing the public, and invigorating civic life;" and "promot[ing] efforts to educate and empower people to protect the natural and human environment."[2]

Although the causes they support vary, *Amici*'s members share one primary goal: to advance causes and issues they each view as fundamental to society through philanthropy.  *Amici* thus have significant interest in this case, in which American Alliance for Equal Rights (the "Alliance") seeks to interfere with the permissible, Code Section 501(c)(3) compliant charitable activities of a 501(c)(3) organization. *Amici* submit that their unique, experienced perspective will help the Court grapple with the implications of the claims asserted in this case.[3]

---

[1] *See Member Directory*, Council on Foundations, https://cof.org/member-directory/non-members (last visited Jan. 28, 2026).

[2] *See Membership List*, Independent Sector, https://independentsector.org/wp-content/uploads/2025/08/Independent-Sector-Member-Directory.pdf (last visited Jan. 28, 2026).

[3] All parties have consented to the filing of this brief.  No counsel for a party in this case authored this brief in whole or in part.  No person or entity made any monetary contributions intended for the preparation or submission of this brief.  To the extent that any party is a member of any *amicus* organization, it did not contribute towards payment of the fee for the preparation of this brief.

## SUMMARY OF ARGUMENT

*Amici* urge the Court to reject the Alliance's attempt to interfere with Hispanic Scholarship Fund's ("HSF") charitable giving. HSF is the nation's largest nonprofit organization supporting higher education for Hispanic Americans. Like most of *Amici*'s members, it is a 501(c)(3) tax-exempt charitable organization. HSF qualifies as a 501(c)(3) tax-exempt organization because it is organized and operates exclusively for charitable purposes, and no part of its net earnings benefit any private individual. *See* 26 U.S.C. § 501(c)(3).

The Alliance asks the Court to hold that anti-discrimination laws prohibit HSF from gifting scholarships to Hispanic American students. Those laws, which were enacted to protect Americans from invidious discrimination, were never intended and should not be used to interfere with the otherwise permissible activities of 501(c)(3) tax-exempt charitable organizations. Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") prohibits discrimination when making and enforcing *contracts*. The D.C. Circuit has held that, to make a contract under Section 1981, parties must engage in a bargain in which consideration flows to each of them.

The very essence of a charitable organization is that it provides support without asking for any financial return. Section 1981 therefore cannot apply to HSF's charitable scholarships because HSF, a 501(c)(3), does not request or accept anything of value in exchange for those scholarships. HSF's charitable scholarships

do not create contracts under the law. The Court should reject the Alliance's effort to interfere with HSF's giving, which threatens to chill philanthropy and the long-recognized freedom to give generously in pursuit of charitable missions.

## ARGUMENT

Restricting charitable giving under anti-discrimination laws would stifle a tradition of autonomy in American philanthropy that fostered just shy of $600 billion in donations to causes, organizations, and individuals in 2024. *See* Giving USA, the Annual Report on Philanthropy. The Court should reject the Alliance's effort to do so.

### 1.    501(c)(3) Organizations Operate Exclusively for Charitable Purposes that Benefit the Public Welfare.

Charitable organizations have used philanthropy to support the American public for more than a century. Private foundations, community foundations, religious organizations, scholarship funds, charitable trusts, hospitals, churches, and other organizations make up more than one million charities operating in the United States. In 2024, Americans gave about $592 billion to charities. Foundations provided more than $100 billion in charitable assistance.

Because of their benefit to the public, charities recognized as 501(c)(3) organizations under the Internal Revenue Code are exempt from federal income tax. *See* 26 U.S.C. § 501(c)(3). Donations to charities are also eligible for charitable contribution deductions for federal income tax purposes. 26 U.S.C. § 170(a). To

qualify as a tax-exempt 501(c)(3) organization under the Code, an organization must demonstrate: (1) it is organized and operated exclusively for certain specified exempt purposes; (2) no part of its net earnings inures to the benefit of a private shareholder or individual; (3) no part of its activities constitutes intervention or participation in any political campaign on behalf of any candidate for public office; and (4) no substantial part of its activities consists of political or lobbying activities. *Family Tr. of Mass., Inc. v. Unites States*, 722 F.3d 355, 359 (D.C. Cir. 2013). Under the IRS's test, "[a]n organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3)"; conversely, "[a]n organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose." *Id.* (citing 26 C.F.R. § 1.501(c)(3)-1(c)(1)).

The charitable purposes specified in 501(c)(3) include:

> Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency.

26 C.F.R. § 1.501(c)(3)-1(d)(2). The government exempts charitable organizations and donations from taxation to promote these activities, which benefit the general welfare and public interest.

Charities can engage in commercial transactions that are tangential to their philanthropy, but an organization that operates for a "substantial commercial purpose" does not qualify as a tax-exempt charitable organization. *Family Tr. of Mass., Inc.*, 722 F.3d at 359 (citing *Better Bus. Bureau v. United States*, 326 U.S. 279, 283–84 (1945)) (holding a "'commercial hue permeating ... [the] organization' disqualified that organization from 'exclusively for ... educational purposes' exemption"). An organization must operate exclusively for charitable purposes to maintain its 501(c)(3) status. HSF is a 501(c)(3) tax-exempt organization that operates exclusively for charitable purposes.

### 2.    HSF's Scholarships Are Charitable Gifts from a Charitable 501(c)(3) Organization, Not Contracts.

Section 1981 was enacted after the Civil War to guarantee recently emancipated slaves the same rights to make and enforce contracts "as enjoyed by white citizens." 42 U.S.C. § 1981. The Alliance contends that Section 1981 restricts HSF's scholarships because they are "contracts" between "private actors." That is incorrect.

To create the kind of "contract" between "private actors" to which Section 1981 applies, HSF and its scholarship recipients would need to "engage[] in 'a bargain in which there [was] a manifestation of mutual assent to the exchange and a consideration.'" *Russell v. District of Columbia*, 747 F. Supp. 72, 79–80 (D.D.C. 1990), *aff'd*, 984 F.2d 1255 (D.C. Cir. 1993) (citing Restatement (Second) of

Contracts § 17(1) (1981)); *accord Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1003 (D.C. 2008) ("For a contract to be enforceable, each party must undertake to do something the party otherwise is under no legal obligation to do, or to refrain from doing something the party has a legal right to do.") (internal quotations and citation omitted); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship' under which the plaintiff has rights.") (citation omitted); *see also Muckle v. UNCF*, 930 F. Supp. 2d 1355, 1359 (N.D. Ga. 2012) (documents informing plaintiff he received a scholarship from a foundation did not create a contract with the foundation because plaintiff did not "allege any consideration flowing from him to anyone" and thus instead "alleged nothing more than a gift from a charitable program").

HSF's scholarships are "nothing more than [gifts] from a charitable program." *See Muckle*, 930 F. Supp. 2d at 1359. HSF's scholarships are charitable gifts that are consistent with tax-exemption because they fulfill a charitable purpose specified in the Code. They do not create the type of consideration between HSF and its scholarship awardees that would invoke Section 1981. Indeed, as the Supreme Court recognized in the context of charitable donations exempt under 26 U.S.C. § 170(a), "[t]he *sine qua non* of a charitable contribution is a transfer of money or property *without adequate consideration.*" *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 691

(1989) (emphasis added) (quoting *United States v. Am. Bar Endowment*, 477 U.S. 105, 118 (1986)).   In the context of charitable donations, Congress explicitly recognized the difference between unrequited payments, which are tax-deductible, and payments made in return for goods or services, which are not.  *Id.* at 690 (citing S. Rep. No. 1622, 83d Cong., 2d Sess., 196 (1954), H.R. Rep. No. 1337, 83d Cong., 2d Sess., A44 (1954), U.S. Code Cong. & Admin. News 1954, pp. 4017, 4180, 4831); *see also Spirit Lake Tribe ex rel. Comm. of Understanding & Respect v. Nat'l Collegiate Athletic Ass'n*, 715 F.3d 1089, 1093 (8th Cir. 2013) ("However meaningful the ... grant may have been[] there was no contract because there was no indication of mutual intent to create a legal obligation.").

HSF's scholarships are *charitable* awards in exchange for which HSF does not receive any financial consideration. *See Bingler v. Johnson*, 394 U.S. 741, 751 (1969) ("[T]he ordinary understanding of 'scholarships' and 'fellowships' [is] as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial *quid pro quo* from the recipients."). HSF scholarships therefore do not create "contracts" under Section 1981.  Section 1981, which only applies to contractual relationships, does not apply to HSF's scholarships or other tax-exempt charitable gifts.

### 3. The Alliance's Claims Threaten a Long-Recognized Freedom to Give That is Critical to Public Welfare.

Interpreting Section 1981 to prohibit HSF's charitable scholarships to Hispanic American students would chill the charitable efforts of many of the nation's more than 1.3 million charities. The country depends on that philanthropy. The very purpose of the tax exemption for charitable organizations is to encourage a robust and diverse charitable sector that serves the public, meeting needs that would otherwise go unmet. The success of American philanthropy depends on the freedom of charitable organizations to pursue a diverse range of missions, without private interference, as long as they operate exclusively for charitable purposes.

Indeed, courts have recognized that foundations and nonprofits engage in expressive conduct worthy of First Amendment protection when they make grants that further their specific missions, express points of view on social issues and causes, and enhance core public values and services. *See All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 430 F. Supp. 2d 222, 262 (S.D.N.Y. 2006), *aff'd*, 651 F.3d 218 (2d Cir. 2011); *Riley v. Nat'l Fed'n of the Blind, Inc.*, 487 U.S. 781, 787-88 (1988). Prohibiting HSF from selecting the scholarship recipients it believes will best further its charitable purpose would threaten the fundamental right of foundations and nonprofits to express their missions and ideals through philanthropy. The Court should reject the Alliance's effort to interfere with HSF's charitable work.

## <u>CONCLUSION</u>

This Court should dismiss the Alliance's claims, and protect charitable organizations' long-recognized freedom to choose who benefits from their generosity.

Dated:  January 28, 2026                     Respectfully submitted,

*/s/ Stephanie Schuster*
Stephanie Schuster (DC Bar No. 1011924)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
T. 202.373.6595
stephanie.schuster@morganlewis.com

Emily Cuneo DeSmedt (*pro hac vice* forthcoming)
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ  08540
T.    202.739.3000
emily.desmedt@morganlewis.com

*Counsel for Council on Foundations and Independent Sector*